# IN THE COURT OF APPEALS OF IOWA

No. 16-0254
Filed April 6, 2016

**IN THE INTEREST OF D.S. AND M.R.,**
**Minor Children,**

**D.M., Father,**
Appellant.

_____

Appeal from the Iowa District Court for Pottawattamie County, Gary K. Anderson, District Associate Judge.

A father appeals the termination of his parental rights to his children. **AFFIRMED.**

Vanessa E. Strazdas of Strazdas Law, Council Bluffs, for appellant father.

Thomas J. Miller, Attorney General, and Kathrine S. Miller-Todd, Assistant Attorney General, for appellee State.

Roberta J. Megel of the State Public Defender's Office, Council Bluffs, for minor children.

Considered by Vaitheswaran, P.J., and Doyle and Mullins, JJ.

**DOYLE, Judge.**

A father appeals the termination of his parental rights to his two children: D.S., born in 2008, and M.R.,[1] born in 2005. He challenges the sufficiency of the evidence to terminate his parental rights under Iowa Code section 232.116(1) (2015). Because clear and convincing evidence shows the father deserted the children, the grounds for terminating his rights pursuant to section 232.116(1)(b) have been proved, and we affirm.

The father lived in the United States from 1999 until 2009, when he was deported. He has since lived in Mexico with two other children while D.S. and M.R. continued to reside in the United States with the mother. The father lost contact with both children.

In October 2013, the mother left the children with their great aunt, and the Iowa Department of Human Services (DHS) became involved with the children shortly thereafter. The State filed a petition alleging the children to be in need of assistance (CINA) on December 31, 2013. Two weeks later, after the mother informed the DHS of her intention to take the children from their great aunt's care and move to North Carolina, a temporary order was entered placing the children in their great aunt's custody. The children were adjudicated CINA pursuant to Iowa Code section 232.2(6)(j) and (*l*) (2013).

In late 2014, the mother visited the father in Mexico and informed him of the children's involvement with the DHS and the CINA proceedings. The father then contacted the DHS through the Mexican Consulate to become involved in

---

[1] He is listed as the putative father of M.R. Though both he and the mother testified at the termination hearing that he is M.R.'s father, he is not listed on M.R.'s birth certificate and his paternity has never been established.

the CINA proceedings, and he was appointed an attorney in May 2015. At the father's request, a home study was conducted on the father's residence in Mexico, which indicated the father's home was adequate for raising children and the father had adequate income to care for the children. The father also requested telephone visitation with the children, which he received with D.S. in October 2015. However, the father speaks little English, and D.S. speaks little Spanish. Because D.S. equates the Spanish language with a stepfather's physical abuse, D.S. reacted negatively to hearing Spanish during the short phone visit and demonstrated "extreme behaviors," like throwing things and having tantrums, in the week following the phone visit.

The State filed a petition seeking to terminate the mother's and the father's parental rights in June 2015. The father appeared telephonically at the November 2015 termination hearing and testified with the assistance of an interpreter. In January 2016, the juvenile court entered an order terminating the father's parental rights pursuant to sections 232.116(1)(b), (d), (e), (f), and (i) (2015).[2] The father appealed.

We review termination-of-parental-rights proceedings de novo. *In re T.S.*, 868 N.W.2d 425, 431 (Iowa Ct. App. 2015). We uphold an order terminating parental rights if the statutory grounds for termination are shown by clear and convincing evidence. *Id.* This burden of proof is met if there are no serious or substantial doubts as to the correctness of the conclusions of law drawn from the evidence. *Id.*

---

[2] The mother's parental rights were also terminated, though the termination of her rights is not at issue in this appeal.

Although the juvenile court found clear and convincing evidence to terminate the father's parental rights under five of the paragraphs of section 232.116(1), we need only find the evidence supports terminating the father's parental rights on one of these grounds to affirm. *See id.* at 435. A parent's rights may be terminated under section 232.116(1)(b) if clear and convincing evidence establishes that the child has been abandoned or deserted. Desertion is defined in chapter 232 as "the relinquishment or surrender for a period in excess of six months of the parental rights, duties, or privileges inherent in the parent-child relationship." Iowa Code § 232.2(14).

Clear and convincing evidence supports the finding the father deserted the children. The father has never lived with or established paternity of M.R., and he has not had any contact with M.R. since his deportation in 2009. Although the father lived with D.S. during the first part of the child's life, he has not seen D.S. since the child was approximately one-and-a-half years old. The father's only contact with D.S. since 2009 came during a short telephone visit that occurred a week before the termination hearing, and the language barrier impeded the father's ability to communicate with the child during that visit.

The father argues there is insufficient evidence to support termination of his parental rights under section 232.116(1)(b) because there is no evidence he acted with an intent to abandon his children because he did not willingly leave the United States and was unable to locate the mother after he was deported. However, the State is not required to prove the parent intended to desert the child. *Id.* Rather, desertion is evidenced by the lack of attempted contact or by mere incidental contact between the parent and child. *Id.* The father testified at

the termination-of-parental-rights hearing that he did not have any contact with the children after he was deported because he did not know where the mother was. Although he testified he attempted to find the mother, he did not divulge what efforts he made to this end. The record indicates the mother may not have been that difficult to track, however, considering that that the father's brother was able to contact her "through Facebook" in November 2014. We also note that although the father complains the first DHS worker did not facilitate visits between him and the children, he testified at the hearing he only had contact with that worker "on one occasion" when he first became involved in the case, one year earlier. The record before us provides little documentation of the father's efforts.

The evidence shows that regardless of his intent, the father relinquished his rights, duties, or privileges with regard to these children by failing to provide them with physical, emotional, or financial support in the six years leading up to the termination of his parental rights. Because the grounds for termination under section 232.116(1)(b) have been established by clear and convincing evidence, we affirm the order terminating the father's parental rights.

**AFFIRMED.**